## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA J. SOLOCK o/b/o** | : | |
| **F.A.R.P.** | : | **Civil No. 1:12-CV-1118** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | **(Magistrate Judge Carlson)** |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

### <u>MEMORANDUM OPINION</u>

**I.   <u>Procedural History</u>**

On February 12, 2010, Barbara Solock (the "Plaintiff") filed an application for supplemental security income benefits ("SSI") on behalf of her minor son ("F.A.R.P.") based on F.A.R.P.'s diagnoses of adjustment disorder and dyslexia. The alleged onset date of disability is February 12, 2007. The Social Security Administration denied the claim initially on May 6, 2010.

At the Plaintiff's request, an administrative law judge (the "ALJ") held a hearing on April 7, 2011.  F.A.R.P. was not present at the hearing; however, his mother testified on his behalf.  As part of the evaluation of the claim, the ALJ

reviewed medical and educational reports pertaining to F.A.R.P.'s social skill and academic performance.  On July 13, 2011, the ALJ issued a decision finding that F.A.R.P. was not disabled as defined by the social security regulations and was, therefore, not entitled to supplemental security benefits.  On April 13, 2012, the Appeals Counsel denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.

On June 12, 2012, Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g).  The parties have now fully briefed this social security appeal, making this case ripe for resolution.

## II.    <u>Statement of Facts</u>

F.A.R.P. was born on February 26, 1996.  He began to exhibit weakness in the acquisition of basic reading skills in first grade and was placed in the Title-One Reading Program.  (Tr. 187.)  In fifth grade, around the time of the alleged onset date, F.A.R.P. began experiencing increased difficulty with his school work, at which time his mother requested that he be examined by the school psychiatrist. (Tr. 187.)  The test results showed that F.A.R.P.'s intellectual abilities fell within the average range, but that his reading and writing skills were well below average due to a reading and spelling disorder.  (Tr. 193-94.)  According to his mother,

F.A.R.P. attended classes in a special education room in sixth grade, and in seventh grade he began an Individualized Educational Program (IEP).  (Tr.38.)

In eighth grade F.A.R.P. was reevaluated.  (Tr. 201-211.)  The eighth grade report concluded that he continued to need specially designed instruction due to his learning disability in the areas of basic reading skills and written expression.  (Tr. 206.)  The report showed that his overall intellectual ability fell within the average range, but that he "exhibited weakness in visual motor coordination."  (Tr. 203.) The report stated that F.A.R.P. showed the ability to work independently, had a very likeable personality, and had an exemplary attendance record.  (Tr. 205.) However, the report showed a severe discrepancy between F.A.R.P.'s intellectual ability and actual achievement, and stated that he continued to need help with basic reading skills, written expression, and basic math facts. (Tr. 205, 210.)  The report also stated that F.A.R.P. was not mentally retarded and did not have an emotional disturbance.  (Tr. 210.)

The "Teacher Input" section of the eighth grade report indicates that his teacher believed that F.A.R.P. was making progress, that he had improved his ability to submit assignments in a timely manner, and that he was a strong auditory learner.  (Tr. 187-188.)  However, his teacher indicated that he had difficulty with reading aloud, spelling, and written expression; and that he had difficulty in all academic subjects where a written response was required on assignments and tests.

Id.  The teacher also reported that F.A.R.P. was respectful to authority figures, got along with his classmates most of the time, and had demonstrated an improved work ethic as the year progressed.  Id.

The record reveals that F.A.R.P.'s behavioral problems have increased with age.  Although his fifth grade teacher did not report any behavioral issues, his mother reports that in sixth grade he attended classes in a one-on-one special education class room due to learning difficulties and behavioral issues.  (Tr. 38.)  By ninth grade, F.A.R.P. was disciplined by the school for numerous incidents including fighting, racially insulting another student, and failing to turn in his homework.  (Tr. 39.)

At the time of the ALJ hearing, F.A.R.P. was in ninth grade, but was only able to write at a third-grade level and read at a sixth-grade level; however, his mathematics abilities tested at an eighth-grade level.  (Tr. 44, 146.)  He has difficulty with reading comprehension, and expressing in writing ideas that he would otherwise be able to communicate verbally.  (Tr. 45-46.)  He also exhibits difficulty carrying out multi-step instructions and multi-tasking, and he is easily distracted.  Id.

In terms of socialization, F.A.R.P.'s mother testified that he has two friends from out of town and some friends at school, but he does not like to associate with

any of his friends from school outside of the schoolhouse.  (Tr. 47.)  She also testified that some of his behavioral issues manifest when he tries to act as a class clown in order to cover up his learning difficulties, and where he his bullied by a certain boy at school.  (Tr. 40, 43, 49.)

Because of his learning difficulties and behavioral issues at school, Plaintiff sought evaluation and counseling for F.A.R.P. at the Northern Tier Clinic ("Northern Tier").  (Tr. 42, 376-82.)   At Northern Tier, the treating physician diagnosed F.A.R.P. with Adjustment Disorder and Dyslexia leading to behavioral problems, and assigned him a Global Assessment of Functioning score of 52.  (Tr. 382.)  The treating physician reported that F.A.R.P. appeared depressed, but that he did not have any homicidal or suicidal ideation.  Id.  The physician also reported that F.A.R.P. was appropriately groomed and dressed, his thought process was intact, and he was able to answer most questions for himself.  Id.  The treating physician recommended OPT Therapy for further assessment.  Id.

## III.   Substantial Evidence Standard of Review

This Court's review of the Commissioner's decision denying social security benefits is a narrow one, and is limited to whether there is substantial evidence in the record to support the Commissioner's findings, and whether ALJ applied the correct legal standards.  42 U.S.C. § 405(g); Richardson v Perales, 402 U.S. 389,

401 (1971); Brown v. Bowen 845 F.2d 1211, 1213 (3d Cir 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008).   The substantial evidence standard is a deferential standard of review.   Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see also Johnson, 529 F.3d at 200 (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)).   The substantial evidence standard does not require a large or considerable amount of evidence; however, it does require "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)); Pierce v. Underwood, 487 U.S. 552, 564; see also Johnson, 529 F.3d at 200 (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).   Therefore, if a reasonable mind might accept the relevant evidence as adequate to support the Commissioner's conclusion, then the Commissioner's determination is supported by substantial evidence.   Jones, 364 F.3d at 503; Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

## IV.   **Child Disability Benefits Three-Step Analysis**

A child under age 18 is entitled to supplemental security benefits only if he suffers from "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(C)(I).   Child

disability is determined according to a three-step sequential analysis.  20 C.F.R. §

416.924(a)-(d); Watkins v. Comm'r of Soc. Sec., 131 F. App'x 362, 364 (3d Cir.

2005).  "Under this analysis, a child is deemed disabled if:  (1) he or she is not

working and not engaged in substantial gainful activity; (2) he or she has a

medically determinable impairment that is severe; and (3) the medically

determinable severe impairment meets, medically equals, or functionally equals a

listing [("Listings")] in 20 C.F.R. Part 404, subpart P, Appendix 1."  Id.

For an impairment to be functionally equal in severity to a Listing under step

three of the analysis, a child must show "marked" limitations in two domains of

functioning or "extreme" limitation in one domain.  Richardson v. Barnhart, 136 F.

App'x 463, 465 (3d Cir. 2005) (citing 20 C.F.R. § 416.926(a) (2005)).  The six

development and functioning domains include:  acquiring and using information;

attending to and completing tasks; interacting and relating with others; moving

about and manipulating objects; caring for oneself; and health and physical well-

being.  Id. (citing 20 C.F.R. § 416.926a(b)(1)(i)—(vi) (2005)).  A marked

limitation in a domain is found where impairment interferes seriously with the

child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §

416.926a(e)(2).  A marked limitation is more than moderate but less than extreme.

Id.  An extreme limitation in a domain is found where the impairment interferes

"very seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3).

## V.    The ALJ's Decision

At steps one and two of the foregoing analysis, the ALJ found that F.A.R.P. was not working or engaged in substantial gainful activity and that his dyslexia and adjustment disorder qualified as severe impairment.  (Tr. 14.)  However, at step three the ALJ determined that none of F.A.R.P.'s impairments met or medically equaled a Listing because none of his impairments were marked or extreme.  (Tr. 14-15.)  The ALJ denied benefits based on this finding.  (Tr. 22.)

## VI.   Plaintiff's Arguments

Plaintiff appeals the ALJ's determination, asserting that the ALJ erred by: (1) failing to fulfill his affirmative duty to assist the claimant in developing the record; (2) failing to render a decision in accordance with the prevailing legal standard; (3) failing to find a marked limitation in the acquiring and using information domain; (4) failing to find a marked limitation in the attending and completing tasks domain; (5) failing to find a marked limitation in the interacting and relating to others domain.  Upon consideration of the record and the ALJ's decision, we disagree.

**(1) The ALJ fully performed his duty to develop the record.**

Plaintiff first argues that the ALJ did not fulfill his obligation to adequately develop the record because the ALJ "failed to develop arguments supporting the award of benefits," and "took no steps to assist the Plaintiff child in developing the record . . . " (Pl. Br. 11.)  Plaintiff argues that the ALJ has an affirmative duty to assist the claimant with establishing his claim, and that he failed to do so during the administrative proceedings in this case. (Pl. Br. 10-12.)

It is true that administrative proceedings are distinct from adversarial judicial proceedings, and thus in some cases the ALJ may have an obligation to ensure that the administrative record is adequately developed, specifically where the claimant has not done so.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) This is true because "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails."  <u>Id.</u> (citing <u>Hess v. Sec'y of Health, Ed. & Welfare</u>, 497 F.2d 837, 840 (3d Cir. 1974)). However, the ALJ is not required to search out all relevant evidence which might be available, "since that would in effect shift the burden of proof to the government."  <u>Id.</u> at 840 (citing <u>Easley v. Finch</u>, 431 F.2d 1351, 1353 (4th Cir. 1970)).

The regulations in this field thus require the ALJ to inquire fully into the matters at issue and admit testimony of witnesses and any documents which are relevant and material.   20 C.F.R. § 410.640.   If the ALJ believes that there is relevant and material evidence available which has not been presented at the hearing, the ALJ may take the necessary steps to ensure that evidence is entered into the record.  Id.

"It is important to recognize that the scope of an ALJ's duty to independently investigate the facts is relatively narrow."  Poleck v. Astrue, 2009 WL 3738602, at * 2 (E.D. Pa.  2009).  The Third Circuit has "never formally imposed a broad duty to investigate and develop arguments for all parties."  Id. (citing N.J. Media Group v. Ashcroft, 308 F.3d 198, 223 (3d Cir. 2002); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 n.2 (3d Cir. 2000)).  There is a "heightened level of care and the responsibility of the ALJ to assume a more active role when the claimant is unrepresented."  Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

In the case at hand, Plaintiff was represented by counsel who submitted relevant evidence from multiple sources.  There is no evidence in the transcript of the ALJ hearing in this case that the ALJ was at any point anything less than polite to the Plaintiff.  (Tr. 11-22.)  The ALJ reviewed and referred to the relevant evidence submitted by Plaintiff's counsel including the school psychologist report, multiple teacher questionnaires, F.A.R.P.'s disciplinary records, and the

psychological evaluation from the treating physician at Northern Tier.  (Tr. 11-22.) The ALJ analyzed each domain of development and functioning, compared F.A.R.P.'s impairment to the requirements of each respective domain, and gave specific reasons why F.A.R.P.'s impairment did not rise to the level of a marked limitation in each of the respective domains.  Id.

Thus, in his decision, the ALJ stated that his determination was based on F.A.R.P.'s school psychological report (Ex. 1F), the intake form from Northern Tier (Ex. 4F), the teacher questionnaires, and the function report filled out by his mother (Ex.3E).  (Tr. 16.)  Although the ALJ did not cite to specific documents in the record for every conclusion, the written decision made it clear that the rationale for finding that F.A.R.P. had less than a marked impairment in each domain came directly from evidence submitted by the Plaintiff.  (Tr. 15-16.)

**(2) The ALJ rendered a decision in accordance with the prevailing legal standard.**

Plaintiff argues that the ALJ failed to address F.A.R.P.'s intake report from Dr. Venturanza at Northern Tier, which assessed F.A.R.P. with a Global Assessment of Functioning ("GAF") score of 52.  (Pl. Br. 12-13.)  Plaintiff also asserts that the ALJ failed to accord proper weight to the input from F.A.R.P.'s teachers.  (Pl. Br. 12.)

Although the SSA considers opinions from medical sources on issues such as whether a claimant's impairments meet or equal the requirements of any impairment in the listing, the final responsibility for deciding these issues is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2).  Generally, the SSA gives more weight to opinions from treating sources, since those sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments.  20 C.F.R. § 416.927(c)(2).  A teacher is not an acceptable medical source; therefore, a teacher's opinion is not entitled to any significant weight.   20 C.F.R. § 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment").   Even if a teacher's opinion or assessment could be accorded the same weight as a doctor's, a doctor's opinion can never bind the Commissioner on the issues reserved to the Commissioner.  20 C.F.R. § 416.927(e)(1)-(3); SSR 96-5p, 1996 WL 374183 (S.S.A.).  In other words, not only are teacher evaluations not entitled to significant weight, they are never controlling.  Id.

Although at the time of the ALJ hearing and decision in this case GAF scores were accorded a great deal of weight in the psychological community,  the American Psychiatric Association ('APA') no longer includes GAF rating for assessment of mental disorders.  See Ladd v. Astrue, CIV.A. 12-4553, 2014 WL 2011638 (E.D. Pa. May 16, 2014).   Due to concerns about subjectivity in

application and a lack of clarity in the symptoms to be analyzed, the APA abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual [of Mental Disorders] ("DSM–5"). Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 5d, 16 (2013).  In response the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence."  SSA AM–13066 at 5 (July 13, 2013).

In this case, the ALJ did address Dr. Venturanza's evaluation.  (Tr. 16.)  In the written decision the ALJ states, "[H]e does exhibit behavior issues . . . however, these issues are not debilitating."  Id. (ALJ citing Ex. 4F.)  The ALJ's assessment of the single GAF score submitted was also fully consistent with the evidentiary significance of the score and its indicia of a moderate limitation in functioning.  According to the DSM-4, a GAF score of 51-60 was consistent with "moderate difficulty in social, occupational, or school functioning"; whereas, a GAF score of 41-50 was consistent with "any serious impairment in social, occupational, or school functioning," and a score below 50 reflected a major impairment in such areas.  Am. Psychiatric Assoc., Diagnostic and Statistical

<u>Manual of Mental Disorders 4d</u>, 34 (2000).  Therefore, the fact that Dr. Venturanza assessed a GAF of 52 indicates that, in his professional opinion, F.A.R.P. only suffered from moderate difficulty in functioning, and the ALJ's decision was consistent with Dr. Venturanza's opinion.

**(3) The ALJ did not err by failing to find that F.A.R.P. had a marked limitation in acquiring and using information domain.**

Plaintiff argues that the ALJ should have found that F.A.R.P. had a marked limitation in acquiring and using information due to his diagnosis of dyslexia.  (Pl. Br. 12-14.)   In support of this contention, Plaintiff cites F.A.R.P.'s teacher evaluations; specifically citing the teacher evaluation submitted by Ms. Leonard dated March 14, 2011, where she notes that F.A.R.P. had an "obvious problem" with "understanding school and content vocabulary," an "obvious problem" with "reading and comprehending written material", and an "obvious problem" with "expressing ideas in written form."  (Pl. Br. 13-14.)

The acquiring and using information domain focuses on how well the child has acquired information and applies what he has learned.  This domain includes how well children perceive, think about, remember, and use information in all settings.  20 C.F.R. § 416.926a(g); SSR 09-3p.

As stated above, teachers are not acceptable medical sources and their opinions are not entitled to any significant weight. 20 C.F.R. § 416.913. Furthermore, even if Ms. Leonard's questionnaire were to be afforded significant weight, the questionnaire form on which she marked "obvious problems" in the aforementioned areas allowed ratings on a five point scale from "no problem" to "very serious problem" with an "obvious problem" at the median, one point below a "serious problem." (Tr. 147.) It was, therefore, reasonable for the ALJ to interpret the questionnaire as meaning that in Ms. Leonard's opinion, F.A.R.P. did not have a serious problem or very serious problem in those areas, thus supporting the conclusion that F.A.R.P. had a less than marked impairment in those areas.

**(4) The ALJ did not err by failing to find a marked limitation in the attending and completing tasks domain.**

Plaintiff argues that the ALJ should have found that F.A.R.P. had a marked limitation in attending and completing tasks. (Pl. Br. 14-15.) The attending and completing tasks domain considers how well a child is able to focus and maintain his attention and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h).

In his decision the ALJ held that F.A.R.P. did not have a marked limitation in this domain, because he only needed occasional reinforcement and refocusing, and the evidence showed that F.A.R.P. is able to focus on tasks he enjoys with minimal assistance.  (Tr. 18.)  Plaintiff argues that F.A.R.P.'s ability to focus "has nothing to do with interest but rather deals with the Plaintiff struggling in subject[s] which are language based requiring reading comprehension."  Plaintiff cites to multiple teacher questionnaires as stating that F.A.R.P. has obvious problems in several areas under the attending and completing tasks domain.  (Tr. 15.)

As noted above, the substantial evidence standard requires "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  None of the teacher questionnaires indicate that F.A.R.P. has a "serious problem" in any of the activities listed under the attending and completing tasks domain.  (Tr.123, 148, 160.)   Although he requires additional prompting to remain on task, has difficulty refocusing, and carrying out multi-step instructions, the record shows that F.A.R.P. is able to attend streamlined general education classes.  (Tr. 33-34.)

Although the teacher questionnaires indicated concerns about F.A.R.P.'s ability to stay on task, it was within the ALJ's discretion to accord more weight to the opinions of the treating physician and the SSA's consultant than he did to the

opinions of the teachers.  In the childhood disability evaluation, Paul Taren, PhD, found that, although F.A.R.P.'s teachers had observed some motivational problems, overall F.A.R.P. had less than a marked limitation in the attending and completing tasks domain.  (Tr. 367.)  In the Northern Tier intake form, Dr. Venturanza rated F.A.R.P.'s attention span as "good," meaning that he had the ability to stay on task 90% of the time, and that his thought process appeared to be intact.  (Tr. 377.)  Based on the findings in these evaluations, the ALJ could reasonably have found that F.A.R.P. had less than a marked limitation in the attending and completing tasks domain.

**(5) The ALJ did not err by failing to find a marked limitation in the interacting and relating to others domain.**

Plaintiff also argues that the ALJ should have found that F.A.R.P. had a marked limitation in interacting and relating to others.  (Pl. Br. 15-16.)  The interacting and relating to others domain considers how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(i).  The ALJ stated that the record demonstrated F.A.R.P.'s "ability make and keep friends."  (Tr. 20.)  In his brief the Plaintiff suggests that this conclusion was

without evidentiary basis, rhetorically asking, "Where in the record is this supported?" (Pl. Br. 15.)

In fact, the ALJ's conclusion is supported by F.A.R.P.'s mother's testimony at the ALJ hearing. (Tr. 47.) Although he has been in trouble for fighting in school and has been disciplined for making racial slurs, his mother testified at the hearing that these isolated incidents were a result of a boy at school bullying him. (Tr. 43.) His mother testified that F.A.R.P. does not have any friends from school that he spends time with outside of school; however, she testified that he does have friends from other school districts. Id. The ALJ's conclusion is further supported by Dr. Venturanza's assessment of a 52 GAF. (Tr. 382.) According to the DSM-4, a GAF score in between 51-60 indicates only moderate problems at school which manifest as "few friends, conflicts with peers;" whereas a score of 50 and below indicates serious problems at school where the individual has no friends. (DSM-4 p. 34.) Further, the questionnaire completed by Ms. Leonard indicates that F.A.R.P. has "no problem" making and keeping friends and playing cooperatively with others, and she reports only that he "likes to be the center of attention." (Tr. 149.) Given this record evidence, we find that the ALJ's assessment of this asserted limitation on FARP's social functioning was supported by substantial evidence, and was consistent with what this evidence revealed.

## VII.   **Conclusion**

In conclusion, upon consideration of the administrative record, the ALJ's decision, and the parties briefs, we disagree with the Plaintiff's assertions of error and find that the ALJ's decision was supported by substantial evidence and should be upheld. 42 U.S.C. § 1382c; <u>Richardson</u> 402 U.S. at 401; <u>Johnson</u>, 529 F.3d at 200.   Accordingly, the Plaintiff's appeal will be DENIED and this case will be CLOSED.

An appropriate order follows.

So ordered this 17th day of June, 2014.

***S/MARTIN C. CARLSON***

Martin C. Carlson

United States Magistrate Judge
